TWENTY-EIGHT CASKS OF WINE (UNITED STATES v.). See Case No. 14,-281.

TWENTY-EIGHT PACKAGES OF PINS (UNITED STATES v.). See Case No. 16,-561.

TWENTY-FIVE BARRELS OF ALCOHOL (UNITED STATES v.). See Case No. 16,-562.

TWENTY-FIVE CASES OF CLOTHS (UNITED STATES v.). See Case No. 16,-563.

TWENTY-FIVE CASES OF SILKS (HARTSHORN v.). See Case No. 6,168a.

TWENTY-FIVE THOUSAND DOLLARS (TAYLOR v.). See Case No. 13,807.

## Case No. 14,282.

### TWENTY-FIVE THOUSAND GALLONS OF DISTILLED SPIRITS.

[1 Ben. 367.] [1]

District Court, S. D. New York. Aug., 1867.[2]

FORFEITURE — INTERNAL REVENUE — INFORMER'S RIGHT—OPENING A DECREE.

1. Where a proceeding was commenced to forfeit property under the internal revenue laws, and the claimant consented to its condemnation, the value of certain portions being paid into court and those portions released, and a decree of forfeiture against the whole was entered, and that decree was set aside by the court, on application of the claimant, and he came in to defend, but, at a subsequent date, a decree of forfeiture was again entered, under which the property in custody was sold, and its proceeds, together with the amount previously paid in, were held for distribution, and the informer claimed to be entitled to share according to the provisions of the law existing at the time he gave the information: Held, that, under the revenue laws, the right of the informer becomes vested only when the money representing the forfeited property is paid over and is ready for distribution. Until then his right is liable to be divested by the act of the government.

2. Section 9 of the act of July 13, 1866 [14 Stat. 101], as to the time when the informer's right becomes vested, is merely declaratory of the law.

3. The court had the right to set aside the first decree, without the informer's consent.

[Cited in Wheaton v. U. S., Case No. 17,487.]

4. The money paid into court was never ready for distribution until the second decree of forfeiture.

5. The amount of the informer's share must be determined by the law as it stood at the time

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 16,564.]

of the final decree of forfeiture, and not as it stood at the time of the first decree.

This suit was commenced March 3d, 1866, by information praying the forfeiture of certain property for a violation of the internal revenue laws. On the same day, James A. Dorman put in a claim to the property, and consented in open court to the condemnation of the distilled spirits proceeded against, and to the appointment of appraisers of the other property libelled, with a view to the payment into court of its appraised value in lieu of its sale on condemnation, its forfeiture being also consented to, and an order to that effect was entered. The report of the appraisers, filed on the 6th of March, 1866, appraised the value of all the property, except the distilled spirits, at $18,000. Among this property was 5,000 bushels of horse feed, appraised at $3,000. On the 10th of March, 1866, the claimant paid into the registry of the court $15,000, as the appraised value of all the property except the horse feed and the distilled spirits, and afterwards, on the same day, a decree was entered, by consent of the claimant, releasing and discharging from custody the horse feed, and discontinuing this action as to the same, and condemning the spirits and the rest of the property (except the horse feed), and the proceeds so paid into court, and ordering the sale of the spirits, and directing the clerk to retain the proceeds of such sale and the $15,000, to await the further order of the court. On the same day, an order was entered discharging from custody, and delivering to the claimant, all the property proceeded against except the spirits. On the 26th of April, 1866, this court, upon affidavits and the motion of the claimant, the United States not resisting the motion, made an order that the proceedings as to the horse feed stand, and that the decree of March 10th, 1866, as to the condemnation and forfeiture of the spirits, be vacated, and the writ of sale as to the same be set aside (the same not having been yet sold), and that the spirits remain subject to the further order of the court, and that the proceedings under which the sum of $15,000, as the appraised value of the rest of the property, was paid into the registry of the court stand, the proceeds to remain in court to abide its further order, and that the condemnation and forfeiture of the property represented by the $15,000 be vacated, and that the claimant have leave to defend and answer, and that the cause stand for trial at the May term, 1866. On the 2d of May, 1866, Dorman filed his answer, denying all the allegations of the information. On the 17th of December, 1866, a decree was entered, by consent of the claimant, that the spirits, and the $15,000 so in the registry of the court, be condemned as forfeited to the United States, and that a writ of sale be issued, and that the marshal pay the proceeds into the registry of the court, to abide the further order and decree of the court thereon. A

writ for the sale of the spirits was issued, and, on the 16th of January, 1867, the marshal returned the writ, and paid into the registry of the court $43,832 31, as the proceeds of the sale, after deducting the marshal's costs and disbursements, which amounted to $3,233 64, the gross proceeds of the sale having been $47,065 95. The commissions of the district attorney were taxed at two per cent. on $62,065 95, that is, two per cent. on the gross proceeds including the $15,000, and amounted to $1,241 32. The costs of the clerk of the court were $644 52. This left in the registry of the court $56,946 47, as net proceeds. On the 11th of March, 1867, the court made an order, referring it to Commissioner Betts to ascertain and report who was the informer herein, and on whose information the condemnation herein took place, and when such information was given, and what decrees of forfeiture had been entered herein, and when such decrees were entered, and how much had been realized under said decrees, and what number of gallons of spirits were made or run off after the seizure, and what the amount of tax on such spirits was, and to what share of the proceeds the informer was entitled, under any and all acts of congress, all questions of law as to what acts of congress said informer was entitled to claim under, and all other questions of law, to be reserved until the coming in of the report, and such questions of law to be passed upon by the court. On the 5th of June, 1867, the commissioner filed his report. He reported that Benjamin A. McDonald was the informer herein, and the person on whose information the condemnation herein took place, and that such information was given on the 15th of February, 1866. He also reported the facts as to the entry of the decree of March 10th, 1866, and of the order of April 26th, 1866, and of the decree of December 17th, 1866, as they are above set forth. He also reported that McDonald did not consent to the order of April 26th, 1866; that the cause was postponed, at the May term, 1866, on the application of the United States, on account of the absence of a witness; that the basis of the decree of December 17th, 1866, was a default duly taken in favor of the United States, at the December term, 1866; that, of the amount realized under the decree, there remained in the registry of the court the sum of $56,946 50; that, after the seizure of the distillery and property, 12,000 bushels of the grain seized were run off, at the request of the claimant, and 4,200 gallons of spirits were the result, and that was added to the other spirits, and what remained of the same was sold with the rest of said spirits; that the amount of tax on said 4,200 gallons was $2 per gallon, making in all $8,400; that the informer was entitled, under the different acts of congress, to the following shares, accordingly as the court should determine under which of said acts

the informer was entitled to share, namely: (1) If the informer's share were to be paid, as to the entire proceeds, under the act of July 13th, 1866, his share would be $5,000. (2) If the informer's share were to be paid, as to the $15,000 paid into the registry of the court, March 10th, 1866, according to the act then in force, and, as to the residue of the proceeds, according to the act of July 13th, 1866, his share would be one-half of the $15,000, or $7,500, and $5,000 of the residue, making a total of $12,500. (3) If the informer were to be paid, as to the entire proceeds, under the act in force at the time of the seizure, then the informer's one-half of the entire proceeds would be $25,473 25. The United States excepted to the report in these particulars: (1) To so much as stated that McDonald did not consent to the order of April 26th, 1866. (2) To all that portion of the report which referred to the amount to which the informer was entitled, which was included under the third head in the report on that subject. The case came up for hearing on the report and the exceptions, and on the questions of law reserved in the order of March 11th, 1867.

S. G. Courtney, U. S. Dist. Atty., for the United States.

C. Donohue, for McDonald.

BLATCHFORD, District Judge. The first exception is allowed, and the second exception is disallowed.

The main question arising on the facts in this case is as to the share of the proceeds to which McDonald is entitled. This depends on the question as to when his right to a share in such proceeds became vested in him. If such right became vested when the information was given by the informer which led to the seizure, the amount of his share must be determined by the law then in force. If such right became vested only by judgment and payment of the forfeiture thereunder, then the amount of his share must be determined by the law in force at the time of such payment. By section 41 of the internal revenue act of June 30th, 1864 [13 Stat. 239], and section 179 of the same act, as amended by section 1 of the act of March 3d, 1865 [Id. 469], which was the law in force at the time the information was given by the informer, the informer was entitled to a mo. r.·ty of the forfeiture, on distribution. By section 9 of the act of July 13th, 1866, which took effect August 1st, 1866, the law was amended, so as to give to the informer such share as the secretary of the treasury should, by general regulations, provide, not exceeding one moiety, nor more than $5,000 in any one case. Under this amendment and the regulations made thereunder, the share of the informer in this case would be $5,000. Section 9 of the act of July 13th, 1866, also provides as follows: "It is hereby declared to be the true intent and meaning of the present and all previous provisions of internal revenue laws, granting shares to informers, that no right accrues to or is vested in any informer, in any case, until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid, when the informer shall become entitled to his legal share of the sum adjudged or agreed upon and received."

The informer claims that his share of the proceeds in this case is to be determined by the law which was in force when he gave the information which led to the seizure; that, under that law, he is entitled to one-half of the proceeds of the forfeiture; that his right vested at the time he gave the information, subject to the result of a suit; that the decree relates back to the time of the seizure; and that, after the decree of forfeiture in March, 1866, no subsequent consent of the United States opening the decree could change the vested rights of the informer.

It has been uniformly held, under all revenue laws, that the title of the seizor or informer is liable to be divested by the government, until the money is actually paid over for distribution. Opinion of Attorney-General Berrien, 2 Op. Attys. Gen. p. 331; U. S. v. Morris, 10 Wheat. [23 U. S.] 290; Norris v. Crocker, 13 How. [54 U. S.] 440. When the money representing the forfeited property is actually paid over and is ready for distribution, then, and then only, does the interest of the informer become vested in the money. In this particular, the special provision, before cited, in section nine of the act of July 13th, 1866, as to the time when a right accrues to or is vested in an informer, is merely declaratory of what the general law was before that provision was enacted. Until the money is paid over for distribution, the United States have complete control over the suit brought to enforce the forfeiture, and over the forfeiture itself. They can remit the forfeiture and control the suit, at their pleasure. The suit is, by law, brought in the name of the United States, and there is nothing in the statutes applicable to this case, through which alone the informer acquires a right to any share at any time, to indicate that congress did not intend that the United States, as magister litis, should exercise complete control over the suit and its management, until the proceeds of the forfeiture should be ready for distribution.

In the present case, although the $15,000 were paid into court before the entering of the decree of March 10th, 1866, yet it was paid in merely as representing the property of which it was the appraised value; and then the decree of March 10th, 1866, was entered, condemning the spirits and the $15,000 as forfeited to the United States, and ordering a writ of sale, and further ordering that, on the return of the writ, the clerk retain the proceeds, together with the $15,000 to

await the further order of the court. The writ of sale was issued, but, before it was executed as to the spirits, it was set aside, by the order of April 26th, 1866. The $15,-000, although in court, cannot be regarded as having been ready for distribution, any more than if it had been in the shape of the property which it represented, or as having been beyond the control of the court, so far as respected any vested right of the informer in it. Then came the order of April 26th, 1866, setting aside the first decree and opening the whole matter. This decree the court had a right to make, without the consent of the informer. The result is, that the case stands wholly on the decree of December 17th, 1866, and the informer is entitled only to such share as is given to him by the act of July 13th, 1866, and the treasury regulations made thereunder, as respects the $15,-000, as well as the proceeds of the spirits, and that he is entitled to only the sum of $5,000.

This decision was affirmed by the circuit court, on appeal. [Case No. 16,564.]

___

TWENTY-FIVE THOUSAND GALLONS OF SPIRITS (UNITED STATES v.). See Case No. 16,564.

TWENTY-FIVE THOUSAND SEGARS (UNITED STATES v.). See Case No. 16,-565.

TWENTY-FOUR COILS OF CORDAGE (UNITED STATES v.). See Case No. 16,-566.

TWENTY-ONE BALES, ETC. (JOHNSON v.). See Case No. 7,417.

TWENTY-ONE BARRELS OF HIGH WINES (UNITED STATES v.). See Case No. 16,567.

TWENTY-ONE BARRELS OF WHISKY (UNITED STATES v.). See Case No. 16,-568.

TWENTY PACKAGES DISTILLED SPIRITS (UNITED STATES v.). See Case No. 16,569.

TWENTY-SIX BALES OF RUBBER BOOTS (UNITED STATES v.). See Case No. 16,570.